UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DANIEL RAFF,

                Plaintiff,

      - against -

GAYLA RAFF BENAK,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-4414 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

Plaintiff Daniel Raff ("Plaintiff") brings this action for breach of fiduciary duty, conversion, unjust enrichment, and a legal accounting against his sister, Galya Raff Benak (s/h/a Gayla Raff Benak) ("Defendant") based on her alleged mismanagement of the parties' father's trust. Defendant's Motion to Dismiss Plaintiff's Amended Complaint is currently before the Court. For the reasons described below, the Motion to Dismiss is granted, and Plaintiff's Amended Complaint is dismissed.

## BACKGROUND

**I.    Factual Background[1]**

   **A.    Family History**

Plaintiff Daniel Raff and Defendant Galya Raff Benak are siblings. (Am. Compl., Dkt. 6 ¶¶ 5–7, 12.) The parties are the only children of Samuel Raff ("Samuel") and Orah Raff ("Orah")

---

[1] The parties' factual allegations diverge significantly in this case. Where, as here, "jurisdictional facts are placed in dispute, the [C]ourt has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). Consequently, the Court considers not only Plaintiff's allegations, but also extrinsic evidence relevant to jurisdiction.

(collectively, the "Parents"). (*Id.* ¶¶ 7, 12.) In 2020, the Parents moved into an assisted living facility in North Hills, New York, after exhibiting behavior "indicative of mental decline." (*Id.* ¶¶ 17, 21.) Around this time, Defendant obtained power of attorney for the Parents to assist in their move to the assisted living facility. (*Id.* ¶ 18.) In or around 2021, Samuel was "deemed incompetent." (*Id.* ¶ 22.) He died on August 28, 2022. (*Id.* ¶ 57.) Orah continues to reside in North Hills and suffers from dementia. (*Id.* ¶¶ 21, 35.)

### B. The Trust and Its Trustees

During their lifetimes, the Parents created trusts. (*Id.* ¶ 16.) The terms of the trusts provided that "all proceeds from the first decedent parent['s trust] were to be used exclusively for the support and benefit of the surviving parent" and then distributed equally to the children—that is, Plaintiff and Defendant—upon the death of the surviving parent. (*Id.*; *see also* Trust Agreement, Dkt. 19-6 at 4–6.) Samuel's trust (the "Trust") is the trust at issue in this case. (Am. Compl., Dkt. 6 ¶ 13.) Per the terms of the Trust, in the event of Samuel's death, his estate was to be bequeathed to the Trust as described in his last will and testament (the "Will") dated December 29, 2020. (Am. Compl., Dkt. 6 ¶ 13; Will, Dkt. 19-8 ¶ 2.) The Will designated Orah as executor of Samuel's estate, but in the event that she was unable or unwilling to do so, Defendant would serve as sole executor. (Am. Compl., Dkt. 6 ¶ 15; Will, Dkt. 19-8 ¶ 4.) Similarly, the Trust Agreement designated Orah as successor trustee in the event of Samuel's death. (Trust Agreement, Dkt. 19-6 at 7.) In the event Orah died, resigned, or was unable or unwilling to serve as trustee, Defendant would act as successor trustee in Orah's stead. (*Id.*) Plaintiff alleges that Defendant became trustee of the Trust on August 28, 2022, when Samuel died. (*Id.* ¶¶ 44, 57.)

### C. The Alleged Breach of Fiduciary Duty

In addition to serving as the current trustee of the Trust, Plaintiff alleges that Defendant served at various times as executor, fiduciary, and attorney-in-fact for the Parents. (*Id.* ¶¶ 1, 44.) Plaintiff further alleges that in accordance with the terms of the Trust, the Trust's funds are currently intended for Orah's continued medical care as the surviving parent, and that Defendant breached her fiduciary duty to him and Orah, whom he believes are the beneficiaries of the Trust, by self-dealing, as described in more detail below. (*See generally id.*)

First, Plaintiff alleges that, in December 2016, the Parents loaned $605,000 to Defendant to purchase an apartment in New York City for Defendant's daughter (the "NYC Apartment"). (*Id.* ¶ 32.) The title for the NYC Apartment was transferred to Defendant on April 14, 2021. (*Id.* ¶ 33; NYC Apartment Transfer, Dkt. 6-4.) Next, Plaintiff alleges that, between December 22, 2020, and March 30, 2021, checks totaling $1,818,592.93 were written to Defendant from the Trust account. (Am. Compl., Dkt. 6 ¶ 25; Checks from Trust, Dkt. 6-3; Trust Account Statements, Dkt. 19-11.) Further, Plaintiff alleges that Defendant has not shared the location of the funds amounting to over $300,000 for the 2022 sale of the Parents' Florida condominium home ("Florida condominium"). (Am. Compl., Dkt. 6 ¶ 40.)

Defendant responds that, on the contrary, before his death, Samuel knowingly chose to gift Defendant the NYC Apartment as part of his estate planning strategy and to gift other assets, including his cashed-out certificates of deposits and annuities, to Defendant as part of his lifetime gifting plan. (Galya Raff Decl., Dkt. 19-1 ¶¶ 20–26; *see also* 10/27/2022 Ltr., Dkt. 19-9; 11/15/2022 Ltr., Dkt. 19-10.) In addition, Defendant explains that the Parents sold the Florida condominium and subsequently wired those proceeds to the Trust account, not to Defendant. (Def.'s Mot. Dismiss, Dkt. 19-21 ("Def.'s Br.") at 10; Galya Raff Decl., Dkt. 19-1 ¶ 30; Warranty

3

Deed for Florida Condominium, Dkt. 19-18; Wire Transfers for Florida Condominium, Dkt. 19-19.)

## II.     Procedural History

On June 15, 2023, Plaintiff commenced this action against Defendant. (*See* Compl., Dkt. 1.) On June 28, 2023, Plaintiff filed an Amended Complaint. (*See* Am. Compl., Dkt. 6.) In his Amended Complaint, Plaintiff brings claims for breach of fiduciary duty, conversion, unjust enrichment, a preliminary injunction,[2] and a legal accounting based on the aforementioned allegations. (Am. Compl., Dkt. 6 ¶¶ 46–78.) In response to the Amended Complaint, Defendant brought this Motion to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). (*See generally* Def.'s Br.) Defendant's Motion to Dismiss is now ripe for review.

## MOTION TO DISMISS STANDARD

"When [a defendant] move[s] to dismiss under both Rule 12(b)(1) and 12(b)(6), 'the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.'" *Piotrowski ex rel. J.P. v. Rocky Point Union Free Sch. Dist.*, 462 F. Supp. 3d 270, 282 (E.D.N.Y. 2020) (quoting *Secs. Exch. Comm'n v. Rorech*, 673 F. Supp. 2d 217, 220–21 (S.D.N.Y. 2009)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

---

[2] In the paragraphs below the heading "Court IV - Preliminary Injunction," Plaintiff alleges that he "lacks an adequate remedy at law" and "is entitled to a judgment preliminarily restraining and prohibiting Defendant" from further actions. (Am. Compl., Dkt. 6 ¶¶ 72–74.) A preliminary injunction is a form of relief, not a cause of action. *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014). However, "the Court's task on a motion to dismiss is to consider the factual allegations in [the plaintiff]'s complaint to determine if they plausibly suggest an entitlement to relief, and not to determine the appropriate remedy." *Id.* (second alteration in original) (quoting *RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd.*, No. 10-CV- 25 (PGG), 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011)).

2000). To survive a motion to dismiss for lack of standing, the "plaintiff must allege 'facts that affirmatively and plausibly suggest that [he] has standing to sue.'" *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13-CV-7549 (LAK) (JCF), 2014 WL 12768922, at *2 (S.D.N.Y. Apr. 7, 2014) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), *R. & R. adopted*, 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014). In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings. *Id.*; *see also Tandon*, 752 F.3d at 243 (quoting *APWU*, 343 F.3d at 627) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

## DISCUSSION

Defendant argues that the Plaintiff does not have standing to pursue any of his claims. (Def.'s Br. at 15–16.) For the reasons described below, the Court agrees and dismisses the Amended Complaint in its entirety.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise.'" *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004)). The Article III (or constitutional) standing inquiry "focuses on whether a litigant [has] sustained a cognizable injury-in-fact," whereas "[t]he 'prudential standing rule . . . bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Id.* (alterations in original) (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)). Defendant argues that Plaintiff lacks Article III standing. (Def.'s Br. at 6–7, 15–16; Def.'s Reply, Dkt. 19-23 at 6–7.) In addition to addressing whether Plaintiff has Article III standing, the Court raises the issue of

5

prudential standing *sua sponte*. *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-CV-10104 (VEC), 2022 WL 92213, at *2 (S.D.N.Y. Jan. 7, 2022), *aff'd*, 66 F.4th 365 (2d Cir. 2023).

**I.      Article III Standing**

If a plaintiff lacks Article III standing, federal courts do not have subject matter jurisdiction to hear their claim, and the case must be dismissed from federal court. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "To demonstrate injury in fact, a plaintiff must show the invasion of [1] a legally protected interest that is [2] concrete[, 3] particularized[,] and [4] actual or imminent, not conjectural or hypothetical." *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (internal quotation marks and citations omitted). Physical or monetary injury to a plaintiff constitutes a concrete injury in fact under Article III. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Where a plaintiff lacks an injury in fact, they lack standing and federal courts cannot entertain their claims. *Id.* at 426.

Plaintiff brings four causes of action: breach of fiduciary duty, conversion, unjust enrichment, and a legal accounting.[3] (Am. Compl., Dkt. 6 ¶¶ 46–71, 75–78.) Though Plaintiff's allegations are not exactly a model of clarity, at their core, they stem from injuries to the Trust property. To start, in his breach of fiduciary duty claim, Plaintiff alleges that "[a] fiduciary relationship existed between Defendant and Plaintiff" because "Plaintiff is a

---

[3] As explained in note 2, *supra*, Plaintiff's Amended Complaint also includes a count titled "preliminary injunction," but a preliminary injunction is a form of relief, not a cause of action. *Miller*, 994 F. Supp. 2d at 558.

named . . . beneficiary[4] of the Trust for which [Defendant] serves as Trustee." (Am. Compl., Dkt. 6 ¶ 56.) He further alleges that "Defendant further breached her duty where she failed to properly transfer assets into the Trust[.]" (*Id.* ¶ 58.) Plaintiff's remaining three claims sound in similar language: he alleges that "Defendant exercised control over Plaintiff's share of the Trust" property, (*id.* ¶ 63), that she has withheld "Plaintiff's rightful share of the Trust proceeds," and that she has "clearly interfered with Plaintiff's right to ownership and possession," (*id.*). He further alleges that "Defendant has usurped Plaintiff's lawful rights and interests in the Trust[.]" (*Id.* ¶ 69.) Finally, he alleges that Defendant has denied Plaintiff access to all records and transactions that she effectuated "under color of her position of . . . trustee." (*Id.* ¶ 78.)[5]

Whether Plaintiff has standing, then, hinges on whether he has a right to the Trust assets. Without such a right, any injury to the Trust cannot be construed as an injury to him. And without a concrete, particularized injury, Plaintiff has no standing. *Transunion*, 594 U.S. at 424. Put another way, if Plaintiff has no current right to the Trust assets, he cannot be "concretely harmed" by their diminution. *Id.*

The Court finds that Plaintiff has no current right to possess any assets in the Trust, nor does he have any guaranteed future right to the Trust assets. As explained above, the Trust is structured such that "[a]ll proceeds from the first decedent parent['s trust] . . . [will] be used exclusively for the support and benefit of the surviving parent" and then distributed equally to the

---

[4] As explained *infra*, the Court finds that Plaintiff is not a beneficiary of the Trust, but instead has a remainder interest. *See* 106 N.Y. Jur. 2D Trusts § 7 (2024). Individuals with remainder interests are not considered trust beneficiaries under New York law. *Id.*

[5] To a limited extent, Plaintiff also alleges injuries to Orah and/or Samuel. (*See, e.g.*, Am. Compl. ¶¶ 51–52, 54.) Injuries to Orah and/or Samuel do not give rise to Article III standing for Plaintiff for obvious reasons—that is, an injury to Orah or Samuel is not an injury to Plaintiff. Moreover, as described in Part II, *infra*, Plaintiff does not have prudential standing to bring claims on behalf of the Parents.

7

children—that is, Plaintiff and Defendant—only upon the death of the surviving parent, if any assets remain at that time. (Am. Compl., Dkt. 6 ¶ 16; *see also* Trust Agreement, Dkt. 19-6 at 4–6.) Because Orah is alive, neither of the parties have an existing possessory interest in the Trust. Instead, both Plaintiff and Defendant have remainder interests[6] in the Trust, meaning that they only receive a benefit from the trust "upon the life tenant's death," should any assets remain in the Trust. 106 N.Y. Jur. 2D Trusts § 7 (2024). Such an individual is not a "beneficiary" because they "receive[] no 'benefit' from the trust" until the life tenant's death. *Id.* Upon the life tenant's death, individuals with remainder interests "become[] the owner of the property formerly embraced in the trust fund." *Id.* Because Plaintiff is not presently the owner of any assets in the Trust, he lacks a current financial stake in the Trust. Instead, he only has a hypothetical future interest in any assets remaining in the Trust at the time of Orah's death. Without a current financial interest in the Trust, Plaintiff has no cognizable injury and therefore does not have Article III standing.

## II.     Prudential Standing

As an individual with a remainder interest, Plaintiff also lacks prudential standing to bring these claims. Prudential standing "requires that an individual 'assert his own legal rights and interests,'" and bars a plaintiff from "rest[ing] his claim to relief on the legal rights or interests of third parties." *Suarez*, 791 F.3d at 367 (internal quotation marks omitted) (quoting *Rajamin*, 757 F.3d at 86). Here, Plaintiff does not assert his own rights.

As explained in Part I, *supra*, the alleged tortious injuries at issue are injuries to the Trust. These alleged torts against the Trust are governed by New York law.[7] Under New York law, tort

---

[6] An individual with a remainder interest is often called a "remainderman."

[7] Though the Trust Agreement contains a choice-of-law provision specifying that the Trust "shall be construed and regulated in all respects by the laws of the State of Florida," (Trust Agreement, Dkt. 19-6 at 9), this type of provision "does not apply to . . . claims [that] sound in tort," *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (quoting *Rosenberg v. Pillsburg Co.*, 718

claims stemming from "alleged wrongs committed against the trust," including "diversion of trust assets" "are claims personal to the trusts," and can only be brought by trustees. *In re Grotzinger*, 81 A.D.2d 268, 275 (N.Y. App. Div. 1981); *see also Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 730 (2d Cir. 2017) (explaining that trustees hold the right to sue on behalf of a trust); *Weingarten v. Warren*, 753 F. Supp. 491, 496–97 (S.D.N.Y. 1990) (holding that individuals with remainder interests do not have the right to bring tort claims against trustees for alleged mismanagement until they have a right to possess trust property—that is, upon the life tenant's death); *In re Markus*, 610 B.R. 64, 79–80 (Bankr. S.D.N.Y. 2019) ("[R]emainder persons lack standing to object to transactions that occurred during the settlor's life.") (collecting cases). Plaintiff, then, does not have prudential standing to bring any claims based on injuries to the Trust.

Moreover, while Plaintiff's allegations largely sound in injury to the Trust, to some extent, they also sound in injury to Orah and Samuel. (*See, e.g.*, Am. Compl., Dkt. 6 ¶ 51 ("A fiduciary relationship existed between Defendant and Samuel Raff. . . . Defendant owed her father a duty to act in good faith and in his best interests . . . ."); *id.* ¶ 52 ("Defendant knowingly . . . breached her fiduciary duty to Samuel Raff[.]"); *id.* ¶ 54 ("A fiduciary relationship currently exists between Defendant and her mother, Orah Raff[.]").) To the extent Plaintiff seeks to bring claims on behalf of Orah and/or Samuel, however, those claims are also barred by the doctrine of prudential standing. As explained above, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also Suarez*, 791 F.3d at 367 (quoting *Rajamin*, 757 F.3d at 86) (similar).

---

F. Supp. 1146, 1150 (S.D.N.Y. 1989)).  Because this lawsuit sounds in tort and arises from acts that took place in New York State, (*see generally* Am. Compl., Dkt. 6), New York law applies. *See Krock*, 97 F.3d at 645.

9

Consequently, Plaintiff lacks prudential standing to bring any claims on behalf of the Trust, as well as on behalf of Orah and Samuel. His claims therefore must be dismissed.[8]

## CONCLUSION

For the reasons explained above, the Court grants Defendant's Motion to Dismiss and dismisses all claims in the Amended Complaint. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 16, 2024
       Brooklyn, New York

---

[8] The Court notes that Defendant also moved for dismissal on several other grounds, including lack of diversity jurisdiction, failure to state a claim, and a statute of limitations issue. (*See generally* Def.'s Br.) The Court does not address those arguments because the case is dismissed on standing grounds.